368 P.2d 141

Bernice SALAZAR, for and in behalf of all the statutory beneficiaries of Paul Salazar, Claimant-Appellee,

v.

COUNTY OF BERNALILLO—Dorothy I. Cline, Manuel Armijo and Edward V. Balcomb, Commissioners, and General Accident Fire and Life Assurance Corporation, Defendants-Appellants.

No. 6973.

Supreme Court of New Mexico.

Jan. 19, 1962.

COMPTON, Chief Justice.

This is an action for Workmen's Compensation benefits brought by Bernice Salazar for and in behalf of all the statutory beneficiaries of Paul Salazar, her husband, against the County of Bernalillo, Employer, and the General Accident Fire and Life Assurance Corporation, insurer, in which she claims that Paul Salazar suffered an injury by accident arising out of and in the scope of his employment as a probation officer for Bernalillo County on or about July 25, 1958, which injury resulted in his death. Defendants' answer admitted the employment but specifically denied that he had suffered an accident arising out of and in the course of his employment. The cause was tried to a jury and judgment rendered on the verdict awarding claimant benefits as provided by the New Mexico Workmen's Compensation Act, from which judgment defendants appeal.

In considering appellants' first contention that the trial court erred in refusing to grant their motions for directed verdict for the reason that claimant failed to sustain the burden of proving by a reasonable preponderance of the evidence, an accidental death arising out of and in the course of Salazar's employment, we will not undertake to determine upon which side of the issue the evidence preponderates; nevertheless, it is obvious that this point requires considerable discussion. Being

———◆———

Rodey, Dickason, Sloan, Akin & Robb, Robert D. Taichert, Albuquerque, for appellants.

Bingham & Klecan, Albuquerque, for appellee.

limited in our considerations to issues of law, we will view the evidence and inferences reasonably flowing therefrom in a light most favorable to the claimant in determining if there is substantial evidence present to support the jury verdict. New Mexico State Highway Dept. v. Bible, 38 N.M. 372, 34 P.2d 295; Ruiz v. Hedges, 69 N.M. 75, 364 P.2d 136; Viramontes v. Fox, 65 N.M. 275, 335 P.2d 1071.

Paul Salazar had been employed as a Bernalillo County probation officer for approximately five years prior to his death, working with adults as well as with juveniles. At about 5 P.M. on July 23, 1958, he was observed in his office by a co-worker as being very upset over the behavior of one of his probationers, and a few minutes later he was observed by an attorney on a professional call as having a tantrum, as very upset, shouting, pounding the table and incoherent. The claimant stated that when her husband came home to a hurried dinner about 6 P.M. he appeared very tired. Thereafter, about 8 P.M. the same evening, while attending an American Legion meeting called to deal with the problem of indigent transient veterans, he became violently ill and was taken first, at his request, to a priest, and then to St. Joseph's Hospital where his condition was diagnosed as a massive stroke from which he died two days later on July 25, 1958. There is no dispute over the cause of death being due to a cerebral hemorrhage, or rupture of a blood vessel in the brain. It is also undisputed that he had been suffering from essential hypertension, or high blood pressure, for a number of years.

The substance of the testimony offered by claimant's witnesses relating to overwork, fatigue and emotional stress in the course of his employment over a long period of time follows. The probation office was understaffed; the decedent often worked during the noon hour and stayed after the regular working day; the number of cases he handled exceeded the normal work load of a probation officer; he took work home as well as handling telephone calls, personal interviews and other contacts relating to probation work from his home at nights and on weekends. As public relations officer for the probation office, he appeared before the legislature; he made a great number of speeches to various organizations and attended numerous meetings in order to inform the public of the work of his office and get their assistance and cooperation; many of these activities took place at night and some required out-of-town trips on weekends; he helped to organize, and participated in, the Albuquerque Police Department driver-training school for juveniles on Saturday mornings and attended most of its day and evening preparation meetings. The record is replete with testimony of the time, energy and concern he expended, at all hours, in

work related to juvenile organization and rehabilitation.

Appellants admit that Paul Salazar was a dedicated public servant who worked long hours in pursuit of his employment and that he had an emotional upset related to his work three hours before he suffered the fatal stroke, but contend there is no evidence to support a probability that this emotional upset precipitated the stroke. They contend further that, on the contrary, the evidence shows his death was the result of the natural progression of the disease of essential hypertension. With this we cannot agree. Having found substantial evidence to support claimant's allegations of overwork, fatigue and emotional stress endured by decedent in his employment, it remains only to examine the medical testimony given for claimant by Dr. Leroy J. Miller, a neurosurgeon who examined the autopsy report, and by Dr. H. B. Woodward, who treated Salazar from the time he arrived at the hospital until his death, to demonstrate substantial evidence of a causal connection between the conditions of decedent's employment and the precipitation of the fatal attack which resulted in his death.

Dr. Miller testified that hypertension is a chronic illness which will be aggravated by fatigue, emotional stress and excitement; that based upon the facts set forth as to Salazar's employment and medical history, such facts were "definitely conducive to the cerebral attack" and that there is a "strong probability of connection" between these facts and cerebral hemorrhage.

Dr. Woodward, in replying to a hypothetical question which included Salazar's medical history, conditions of employment and emotional upset experienced 3 hours prior to his stroke, stated:

"A. To the extent that an individual with hypertensive vascular disease becomes fatigued through overwork, becomes emotionally upset, the precipitation of a fatal incident may be hastened by such fatigue and exhaustion, over-work and emotional reaction.

"Q. On the facts that were stated to you, Doctor, in regard to this specific person, do you believe that it probably was?

"A. I believe all of the influences on that day played a part in the precipitation of the cerebral hemorrhage at that time, at the time it occurred."

In this connection it is to be noted that one of appellants' medical experts stated that the time of a cerebral hemorrhage cannot be linked to the height of the blood pressure, but will occur when the weak portion of an artery can no longer stand the pressure and bursts. This supports claimant's medical testimony set forth above that the emotional upset related to the work could have, as a matter of probability,

precipitated the stroke that did not occur until 3 hours later.

We agree with appellants' assertion that proof of causal relationship between accident and injury and injury and death must be set forth with particularity as to time, place and circumstance, in order to rise above surmise and speculation; they assert this was lacking here. In Webb v. New Mexico Publishing Company, 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002, however, we held that our Workmen's Compensation Act does not limit the meaning of "accident" to sudden injuries, nor is its meaning limited by any time test. There we said:

"* * * True, there must be a time when it can be said with certainty that a compensable accidental injury has been inflicted; but the cause and the coming into existence of the evidence characterizing it as a compensable one, need not be simultaneous events. An injury may be gradual and progressive, and not immediately discoverable; yet certainly and definitely progress to discovery and then to a compensable injury. * * *"

See also Gilbert v. E. B. Law & Son, Inc., 60 N.M. 101, 287 P.2d 992.

Injury by accident was defined by this court in Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342, as denoting an unlooked for mishap, or an untoward event which is not expected or designed. In that case we said:

"* * * It is not necessary that the injury should result momentarily, to be accidental. It may be the result of hours, even a day, or longer, * * * depending upon the facts of the case."

This is no less true under the facts in this case. We find substantial evidence of the conditions of decedent's employment over a long period of time. That he suffered an emotional upset at his office, related to his work, 3 hours before the stroke is clear. These facts, coupled with the medical testimony that fatigue and emotional upsets hasten the precipitation of a fatal incident in an individual with essential hypertension, and that there was "a strong probability of connection" between these factors and decedent's cerebral hemorrhage, would refute appellants' contention that "the jury should not have been permitted to speculate upon the issue."

Appellants rely strongly on our case of Alspaugh v. Mountain States Mutual Casualty Co., 66 N.M. 126, 343 P.2d 697, as support for their position. The case is clearly distinguishable as in that case there was a lack of evidentiary showing of causal relationship between the injury and the death, more than three months later; whereas, in the instant case, there is a definite showing of a causal relationship. The case is analogous to Teal v. Potash

Company of America, 60 N.M. 409, 292 P.2d 99.

■ Appellants assert that "no one testified that but for the work that Salazar was doing the stroke would not have occurred when it did." A medical expert is not bound to rest his findings upon positive evidence. Under many circumstances, and according to a large number of decisions, he may not even give his conclusions as to what particular occurrence caused a particular condition or whether detailed circumstances actually produced the injury or death as this would be an invasion of the province of the jury. Elsea v. Broome Furniture Co., 47 N.M. 356, 143 P.2d 572; Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000. We cannot say then that the medical experts here should have been able to state which of the factors involved may have played the most serious, or fatal, part in the precipitation of the cerebral hemorrhage at the time it occurred.

In Gilbert v. E. B. Law & Son, Inc., supra; Seay v. Lea County Sand & Gravel Co., 60 N.M. 399, 292 P.2d 93, we held that to entitle an employee to compensation for disability resulting from an accidental injury together with a preexisting condition, there must be proof of an aggravation or acceleration. Subsequently, in Reynolds v. Ruidoso Racing Association, Inc., 69 N.M. 248, 365 P.2d 671, we modified the rule thusly:

"We are of the opinion that where there is a direct relationship or causal connection between the accidental injury and the resulting disability the employee is entitled to compensation to the full extent of the disability even though attributable in part to a preexisting condition, notwithstanding acceleration or aggravation may be absent. It must be clear that there must be some causal connection * * *."

In Vol. 4 of Schneider's Workmen's Compensation Text, § 1328, we find the following:

"It may be stated generally that if the conditions of the employment, whether due to * * * shock, excitement, nervous strain or trauma, tend to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident within the intent of most compensation acts, though the employee may have been suffering from a preexisting diseased condition which predisposed him to such result, or where such result would have occurred in time due to the natural progress of such preexisting condition * * *."

Stevenson v. Lee Moor Contracting Co., supra; Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912, 13 A.L.R. 427.

Admittedly, there was conflict in the testimony, but it was in the province of the

jury to decide what it was going to believe or disbelieve, and we do not think that the verdict was based on surmise and speculation. We find it unnecessary to discuss the question of whether decedent was within the scope of his employment while in attendance at the meeting at which he was stricken, in view of what has been said above, although the evidence is clear that it was not required of Salazar, as a probation officer, to obtain anyone's permission to give speeches or attend meetings concerned with, or incidental to, the work or problems of the probation office.

Appellants further contend that the trial court committed prejudicial error in allowing testimony of one of claimant's expert witnesses with respect to the duties of a probation officer generally because it was neither relevant nor material to the issues; and in allowing her testimony with respect to Salazar's duties in particular because that was a matter within the competency of the jury and not the subject of expert testimony. We cannot agree. Salazar's duties as a probation officer were directly in issue as to scope of employment. The testimony was relevant and material to the issue of whether decedent performed duties as a probation officer, not of his own choosing, but within the field of work generally done by other probation officers. It is true that other witnesses who had worked with him testified of their own knowledge as to his duties and conditions of employ-

ment in particular. The testimony of the expert witness complained of, relating generally to the duties of a probation officer, did not differ in any substantial way from the other testimony as to Salazar's duties in particular and cannot, therefore, be said to have prejudiced the minds of the jurors. Her conclusions and opinions were based primarily on observation and experience in connection with the Bernalillo County Probation Office three years prior to decedent's death, but this was relevant and material to the conditions of his employment over a long period of time. That the duties of a probation officer, and in particular those of Paul Salazar, were within the competency of a jury, in the absence of both expert and nonexpert testimony, is obviously an erroneous contention.

Appellants' basic claim of prejudicial error as to this expert testimony, as well as to the testimony of Judge Swope, the decedent's immediate supervisor, goes to the admission of questions and answers as to whether they thought it was proper for Salazar, as a probation officer, to attend the meeting at which he was stricken. It seems clear the questions were asked in an effort to ascertain whether his attendance at the meeting was in the scope of his employment. The affirmative reply of the expert witness was upon the ultimate issue of fact of whether the subject of the meeting was within the scope of a probation of-

ficer's field. This was her opinion and properly the subject of expert testimony. In Lopez v. Heesen, 69 N.M. 206, 365 P.2d 448, we stated:

"Opinion evidence is admissible on the basis that it will aid the jury to understand the problem and lead them to the truth on the ultimate facts, and opinions may be disregarded by the jury in whole or in part. It is left to the jury to decide the issue. Seal v. Blackburn Tank Truck Service, 64 N. M. 282, 327 P.2d 797; and Hooper v. General Motors Corp., supra. [123 Utah 515, 260 P.2d 549.]"

We also held in Beal v. Southern Union Gas Co., 66 N.M. 424, 349 P.2d 337, that it is established law in this jurisdiction that an expert may give his opinion on matters pertaining to his field, which concern questions of fact, but it is not the function of any witness to state where the responsibility lies. See also 20 Am.Jur., Evidence, § 776. We find nothing in the record indicating that the expert witness expressed an opinion on liability or testified to other than matters of fact.

■ When Judge Swope was asked, in the capacity of decedent's immediate supervisor, whether it was proper for decedent to attend the meeting, he stated he would not consider it improper if the probation office had been called and one of its officers invited to attend. We find nothing prejudicial to appellants in the admission of this testimony in view of the undisputed evidence that decedent was not invited to attend. Lopez v. Heesen, supra, points out that § 21–1–1(43) (a) of our statutes directs us to apply the rule of evidence most favorable to the admissibility of the challenged evidence on the basis that any evidence which throws light on the question in issue should be admitted. We find no prejudicial error in the admission of the testimony of which appellants complain.

■ Finally, it is the contention of appellants that the refusal of the trial judge to give its requested instruction No. 4 was reversible error since this instruction was necessary to submit to the jury appellants' theory of the case, and because a definition of "injury by accident" was not otherwise covered by the court's instructions. The refused instruction reads:

"You are instructed that the words 'injuries by accident' mean in law the same thing as in ordinary usage. It denotes an unlooked for mishap or untoward event which is not expected or designed. The mere development of a symptom of a disease would not be an accident. You are instructed that unless you find that an accident occurred to Paul Salazar which resulted in his death, your verdict must be for the Defendants."

An examination of the record leads to only one conclusion. The theory of appellants' case is that Salazar's death did not result from an accident arising out of and in the course of his employment but from the natural progression of the disease of hypertension, and the jury was so instructed. It was given the following instruction:

"Instruction No. 5—You are instructed that the mere progress of a condition of disease to its ordinary conclusion is not an accident and if you shall find that the occurrence to Paul Salazar was an occurrence that happened in the ordinary course of some ailment with which he was afflicted and was not accelerated or aggravated by his employment, then I charge you that this would not constitute an accident within legal determination and therefore your verdict should be for the defendants."

Appellants' requested instruction was substantially the same as that given by the court with the exception of a statement that "injuries by accident" means in law the same as in ordinary usage. In Douglas v. Southern Pacific Co., 203 Cal. 390, 264 P.2d 237, which we quoted in our recent case of Mc-Fatridge v. Harlem Globe Trotters, 69 N. M. 271, 365 P.2d 918, it was said:

"Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed. * * The instructions must be considered in their entirety, and if, as so considered, they state the law of the case fairly and clearly, then they are, as a whole, unobjectionable, * * *."

This rule has been followed by us in Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047; Olguin v. Thygesen, 47 N.M. 377, 143 P.2d 585; and Barakos v. Sponduris, 64 N. M. 125, 325 P.2d 712.

This court has held that the trial court should state the law as applicable to the particular facts in issue, as shown by the evidence; and that mere abstract propositions of law and mere statements of law in general terms, even though correct, should not be given unless made applicable to the issues in the case. Gerrard v. Harvey & Newman Drilling Co., 59 N.M. 262, 282 P.2d 1105. We think the trial court fairly and accurately informed the jury as to the law applicable to the particular facts in issue and that it committed no error in refusing appellants' requested instruction.

The judgment will be affirmed with an additional award to appellee of $750.00 for the services of her attorney in representing her on this appeal.

It is so ordered.

CARMODY and MOISE, JJ., concur.

CHAVEZ and NOBLE, JJ., not participating.