490 P.2d 475

Sister Mary Assunta STANG, Personal Representative and Ancillary Administratrix with the Will Annexed In the Matter of the Last Will and Testament of Catherine Lavan, Deceased, et al., Plaintiffs-Appellants,

v.

HERTZ CORPORATION, a corporation, Defendant-Appellee.

Sister Mary Assunta STANG, Personal Representative for Catherine Lavan, Deceased, Plaintiff-Appellant,

v.

HERTZ CORPORATION, a corporation, Defendant-Appellee.

No. 626.

Court of Appeals of New Mexico.

Sept. 10, 1971.

Certiorari Granted Oct. 20, 1971.

Richard E. Ransom, Smith, Ransom & Deaton, Albuquerque, for plaintiffs-appellants.

Bruce D. Hall, James C. Ritchie, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

The automobile accident involved in this case occurred when a tire blew out. The tire, manufactured by Firestone Tire & Rubber Company, was mounted on a car belonging to Hertz Corporation. The car had been rented by a nun, and Catherine Lavan, also a nun, was a passenger in the car when the blowout occurred. Catherine Lavan suffered injuries in the accident resulting in her death. Prior appellate decisions were concerned with damages in wrongful death actions. Stang v. Hertz Corporation, 81 N.M. 69, 463 P.2d 45 (Ct. App.1969), aff'd 81 N.M. 348, 467 P.2d 14 (1970). Subsequent to the appellate decisions, the case was tried and submitted to a jury as against Firestone. The verdict was in favor of Firestone. There is no appeal from this verdict. The trial court directed a verdict in favor of Hertz. The dispositive issues in this appeal concern the liability of Hertz. Plaintiffs contend there were issues for the jury concerning: (1) an express warranty and (2) strict liability in tort.

*Express warranty.*

Plaintiffs assert the rental agreement contains an express warranty. They rely on a statement that the "vehicle" was in good mechanical condition. Defendant contends that "vehicle" does not include tires because twice in the rental agreement "tires" were referred to in a sense separate from "vehicle."

Apart from the rental agreement, a Hertz representative, in a conversation with one of the nuns, stated: "you have got good tires." Plaintiffs contend this statement was also an express warranty as to the tires. Defendant asserts this statement was no more than "puffing." See § 50A–2–313(2), N.M.S.A.1953 (Repl.Vol. 8, pt. 1).

It is not necessary to answer these contentions. Section 50A–2–313(1), N.M.S.A.1953 (Repl.Vol. 8, pt. 1) reads:

"Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

We assume there is no distinction between "seller," as used in the statute, and defendant's status as lessor. See Uniform Laws Annotated, Uniform Commercial Code § 2–313, official comment 2 (1962).

Under § 50A–2–313(1), supra, the affirmation of fact (the rental agreement) creates an express warranty if it "becomes part of the basis of the bargain." Similarly, the description of the goods (the reference to good tires) creates an express warranty if the description "is made part of the basis of the bargain." Compare the comments concerning representations made for the purpose of inducing a sale in Vitro Corp. of America v. Texas Vitrified Supply Co., 71 N.M. 95, 376 P.2d 41 (1962).

█ There is no evidence that any of the nuns relied on, or in any way considered, the terms of the rental agreement before agreeing to the rental. See Speed Fastners, Inc. v. Newsom, 382 F.2d 395 (10th Cir. 1967). The comment concerning "good tires" was made after the car had been rented. See Terry v. Moore, 448 P.2d 601 (Wyo.1968). There is no evidence that either the terms of the rental agreement or the reference to "good tires" were part of the basis of the bargain. There was insufficient evidence for the question of express warranty to be submitted to the jury.

*Strict liability in tort.*

Plaintiffs assert: "Strict liability for one who places a defective product in the stream of commerce is now a fact of law. * * * *" They urge this court to adopt this concept in New Mexico, and apply it to a lessor. Evidence pertaining to this contention is that tire failure was the cause of the accident; this failure resulted from impact damage to the tire; the impact damage existed at the time the car was rented; and the impact damage was not discoverable by normal inspection procedures. The rule sought is that stated in 2 Restatement Torts 2d, § 402A (1965). See Schrib v. Seidenberg, 80 N.M. 573, 458 P.2d 825 (Ct.App.1969); Moomey v. Massey Ferguson, Incorporated, 429 F.2d 1184 (10th Cir. 1970). Section 402A, supra, reads:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Section 402A, supra, applies to sellers; the defendant in this case is a lessor. If we apply strict liability against a seller we see no basis in logic for distinguishing a lessor because the practical effect is the same. The strict liability rule has been extended to lessors. Bachner v. Pearson, 479 P.2d 319 (Alas.1970); Price v. Shell Oil Company, 2 Cal.3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970); Stewart v. Budget Rent-A-Car Corporation, 470 P.2d 240 (Hawaii 1970); Cintrone v. Hertz Truck Leasing, etc., 45 N.J. 434, 212 A.2d 769 (1965); see German, Seller Beware—Strict Liability But Not Absolute Liability, XXXVII Insurance Counsel Journal 44 (1970).

Although we see no logical basis for distinguishing a lessor from a seller in connection with the concept of strict liability, nevertheless the Restatement Torts 2d makes such a distinction. Sections 407 and 408 state rules of liability against lessors in terms of negligence. The comment to § 407 states liability under that section is the same as that stated in 2 Restatement Torts 2d, § 388 (1965). The New Mexico Supreme Court applied § 388 in Villanueva v. Nowlin, 77 N.M. 174, 420 P.2d 764 (1966). Compare Barham v. Baca, 80 N.M. 502, 458 P.2d 228 (1969). We have found no New Mexico decision which considered the relationship of § 402A to §§ 407 and 408.

In Speyer, Inc. v. Humble Oil & Refining Company, 275 F.Supp. 861 (W.D.Pa.1967), cert. denied 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969), the restatement distinction was applied.

A choice between these conflicting Restatement Torts sections is a choice of policy. As we see it, the same policy is involved in determining whether § 402A is to be adopted as New Mexico law. As stated in Bachner v. Pearson, supra:

> " * * * [Strict] [l]iability is attached, as a matter of policy, on the basis of the existence of a defect rather than on the basis of the defendant's negligent conduct. * * * "

If the policy decision is that § 402A, supra, applies, then that same policy decision would carry over and make liability for negligence under §§ 407 and 408 inapplicable. If § 402A is not applicable, then no conflict exists with §§ 407 and 408.

The issue presented, then, is whether § 402A, supra, is applicable in New Mexico. Plaintiffs candidly present the question as one of public policy. They point out that more than half the states have adopted some form of strict liability. See citation of cases in 1 Hursh, American Law of Products Liability, 1961, § 5A:2 (Supp. 1971). They urge us to play follow the leader.

In determining whether to do so, we are concerned with the policy reasons for adopting strict liability, and rejecting liability based on negligence, as against a supplier of a defective product. Comment c to § 402A, supra, states:

> " * * * the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products."

The decisions and the articles concerning strict liability of a supplier have little variation from Comment c, supra. Our summary of the "justifications" for imposing strict liability, taken from decisions cited in Hursh, supra, and articles hereinafter cited, is: as an incentive to guard against defects; to spread the risk of loss as a cost of doing business (insurance is included as an aspect of risk-spreading); to avoid circuity of action; public interest in human safety requires it; suppliers, by placing their goods on the market, represent that they are suitable and safe for use. See Prosser, The Assault Upon The Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 32 ATL L.J. 1 (1968); Schwartz, A Products Liability Primer, 33 ATL L.J. 64 (1970). Plaintiffs' reason for imposing strict liability is " * * * the fact that the supplier was involved in the business of placing the product in the stream of commerce. * * * "

Smyser, Products Liability and the American Law Institute: A Petition for Rehearing, 42 U. of Detroit L.J. 343 (1964–65) suggests that the foregoing "justifications" are conclusions for which supporting data are lacking. Sandler, Strict Liability and the Need for Legislation, 53 Va.L.R. 1509 (1967) suggests that some of the foregoing policy arguments are ineffectual and even conflicting. Cowan, Some Policy Bases of Products Liability, 17 Stanford L.R. 1077 (1964–65) suggests there are policy considerations in addition to those summarized above. See dissenting

opinion of Justice Hall in Cintrone v. Hertz Truck Leasing, Etc., supra.

Apparently, there is unanimity on one thing—that the issue before us is a policy issue. The question then is whether this court is the appropriate body to make such a decision. The choice of policy involves more than a choice between legal theories.

Obviously, economics is involved in "risk-spreading" and "cost of doing business." Prosser, Yale L.J., supra, n. 147 at 1121, suggests the validity of risk-spreading may depend on the size of the defendant organization. 2 Harper and James, The Law of Torts § 28, at 33 (1956), states that injuries in the products liability area are "increasingly attributable to large-scale enterprise." Our limited research suggests that "large-scale enterprise" is rare in New Mexico. U.S. Dept. of Commerce, Bureau of Census, New Mexico CBP-67-33, County Business Patterns, 1967, Table 1E, indicates only 15 employers in New Mexico had 500 or more employees in that year. Bank of New Mexico, Ninth Annual Summary Study, The Economy of the State of New Mexico and the City of Albuquerque, June, 1971, states that only 11 of 400 manufacturers in Albuquerque, our largest city, employ 250 persons or more. If size is a factor, and it appears to be, this court is not equipped to determine what would amount to "large-scale enterprise" in New Mexico. Yet, Justice Botter, dissenting in Magrine v. Spector, 100 N.J.Super 223, 241 A.2d 637 (1968) states: " * * * Obviously we cannot determine the rule of liability on the basis of the size or resources of one of the parties. * * * "

Section 402A, supra, places no limitation on "size," regardless of how that term may be defined. It applies to all suppliers. Risk-spreading, as a justification for strict liability, may not be sound when applied to a one-man operation, or even a large financially or competitively marginal defendant. See Magrine v. Krasnica, 94 N.J.Super. 228, 227 A.2d 539 (1967) aff'd Magrine

v. Spector, supra; Prosser, Yale L.J., supra, n. 147.

Apart from economics, is the incidence of defective products causing injury sufficient to justify strict liability? We simply do not know. Schwartz, 33 ATL L.J., supra, gives figures on a nationwide scale. These statistics include, but, however, are not limited, to defective products.

Comment c to § 402A, supra, refers to "public policy demands." These words seem more appropriate to legislative consideration, "demands" more consistent to contract negotiation, than to judicial evaluation.

Some of the reasons advanced in support of strict liability are more relevant than others. For example, we consider "circuity of action" to be of little merit because of § 21-3-16, N.M.S.A.1953 (Repl.Vol. 4). We are attracted to the idea that, as between the injured user and the supplier of the defective product, the supplier should be liable. Yet our attraction is as individuals and consumers. As judges, a necessary consideration is whether we are equipped to make that choice.

We judge neither the validity of the reasons advanced in support of strict liability nor the validity of the concept of strict liability. The issue is whether § 402A, supra, which imposes strict liability on all sellers, should be adopted as New Mexico law. Since this issue involves economic considerations, the consequences of which are unknown, accident statistics which are also unknown and public demands which we are not structured to ascertain, we decline to adopt § 402A, supra, as New Mexico law. Smyser, U. of Detroit L. J., supra; Sandler, Va.L.R., supra. In reaching this result, we do not suggest what our position would be as to strict liability when presented on a basis more limited than the broad and rigid sweep, of § 402A, supra. We hold only that the extension of a seller's liability from negligence to strict liability under § 402A, supra, lies with the Legislature and not this court. See Phares

v. Sandia Lumber Company, 62 N.M. 90, 305 P.2d 367 (1956).

Since we decline to adopt § 402A, supra, defendant's liability would be based on negligence. No claim is made that defendant was negligent.

Since the evidence of express warranty was insufficient to go to the jury and since there is no claim that defendant was negligent, the directed verdict in favor of Hertz is affirmed.

It is so ordered.

HENDLEY and COWAN, JJ., concur.