494 P.2d 178

**STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellant,**

v.

**MILLER METAL COMPANY and Lennox Company, Inc., Defendants-Appellees.**

**No. 679.**

Court of Appeals of New Mexico.
Dec. 10, 1971.

Rehearing Denied Jan. 4, 1972.

Certiorari Granted Feb. 23, 1972.

Eugene E. Klecan, Albuquerque, for plaintiff-appellant.

Ranne B. Miller, Dennis M. McCary, Keleher & McLeod, Albuquerque, for Miller Metal Co.

Ray H. Rodey, Bruce D. Hall Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for Lennox Industries.

OPINION

COWAN, Judge.

The plaintiff appeals from a judgment following a verdict for the defendants.

We affirm.

A house in Bernalillo County, New Mexico, belonging to J. D. Poe and Mary B. Poe, his wife, was damaged by fire on January 2, 1967. The fire started at or near a furnace manufactured and sold by defendant Lennox Industries; Inc. and installed by defendant Miller Metal Company.

Pursuant to the provisions of a policy of fire insurance issued by plaintiff to the Poes, plaintiff paid for the fire damage and filed a subrogation suit against the defendants, alleging negligent installation of the furnace by Miller and strict liability on the part of Lennox.

The evidence, viewed in the light most favorable in support of the verdict, is that the house was constructed, and the Poes took possession of it, in 1963. They lived in the house from November of that year until the latter part of July, 1966, when they went to Colorado, intending to stay two or three weeks. However, they took over the management of a friend's motel and stayed in Colorado until after the fire. The house was vacant during their absence but they had left a key with their daughter and son-in-law, Mr. and Mrs. Fred Stalker. The Stalkers lived nearby and Mrs. Stalker entered the house two or three times a week. A key had also been left with a Mrs. Bennett, who lived next door to the Poe residence. At the time of the fire the Stalkers had been out of the state for approximately ten days.

The air conditioner was operating at the time the Poes left for Colorado and, sometime before winter, Mr. Poe telephoned from Colorado, requesting the Stalkers to prepare the house for the coming winter. Mr. Poe testified that he told his daughter "where to find the thing to cut off the evaporative air conditioner", and he gave her specific instructions to open the dampers on the furnace. Mr. Poe was aware of the fact that if the dampers were left closed the heat would not leave the furnace, and there was testimony that, with the dampers closed, the furnace would overheat to as much as 400 degrees. Its normal operating temperature was 150 degrees. Mrs. Stalker passed Mr. Poe's request along to her husband, who went to the house, but Mrs. Stalker did not know what he actually did at the Poe residence. At the time of the trial Mr. Stalker was ill and did not testify.

Defendant Lennox timely moved for a directed verdict on the ground that strict liability is not the law in New Mexico and on the ground of insufficient evidence that the furnace was defective at the time it was sold or that a defect was the proximate cause of the fire. This motion was overruled and the case against Lennox was presented to the jury, who found for Lennox.

Even if the doctrine of strict liability, as urged by plaintiff, did apply in this jurisdiction (see Stang v. Hertz Corp., 83 N.M. 217, 490 P.2d 475, decided September 10, 1971 [Ct.App.], cert. issued N. M.Sup.Ct. October 20, 1971), there is no evidence that the Lennox furnace was defective at the time it was sold or at the time it was installed. A witness who tested the furnace some 17 months after the fire and almost 5 years after its installation expressed an opinion of a defect in, or malfunction of, a high-level heat control which contributed to the furnace overheating. No opinion was asked or expressed as to the condition of this control at the time of the sale or the installation. Under the theory of strict liability, a defect in the product when it leaves the maker's control and the causal connection between the defect and an injury must be proved. Restatement (Second) of Torts § 402A (1966); Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W. 2d 546 (Tex.Sup.Ct.1969).

It follows that the trial court should have directed a verdict in favor of the defendant Lennox and it is therefore unnec-

essary for us to review alleged errors of the trial court directed to Lennox. "Where plaintiff fails to make a case for the jury, alleged errors of the trial court are immaterial and deemed harmless." Komeshak v. Missouri Petroleum Products Co., 314 S.W.2d 263 (Mo.App.1958).

> "The function of an appellate court is to correct an erroneous result, and it will not correct errors which, even if corrected, will not change the result."

Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967).

■ Proceeding now to Miller, plaintiff seeks reversal under six points. Plaintiff first argues that the court erred in permitting testimony about, and in admitting into evidence, a certification by the American Gas Association (AGA). This certification, defendant's Exhibit "E", was a publication of AGA on safety standards and purported to show that this particular furnace needed no clearance between the back of the furnace and the adjacent structure. Experts of both parties admitted that the AGA was pre-eminent in the field of safety standards for gas appliances. Plaintiff's expert had testified that the nameplate on the furnace indicated a requirement of "one-inch clearance" and the certificate was used by defendant Miller in the cross-examination of this witness.

We do not find that the use of this exhibit on cross-examination or its introduction in evidence was error. In Nordstrom v. White Metal Rolling & Stamping Corp., 75 Wash.2d 629, 453 P.2d 619 (1969), the Supreme Court of Washington stated the modern rule to be:

> " * * * [W]here evidence of the contents of a publication must be admitted if the relevant and material information contained therein is to be made available to the trier of the facts, and the publication is one which reasonable minds would agree is trustworthy, there appears to be no sound reason why such evidence should be excluded. The purpose of the hearsay rule is not offended by the introduction of such evidence."

The necessary elements were present in this case and the action of the trial court was not erroneous. Compare Curtis v. Schwartzman Packing Company, 61 N.M. 305, 299 P.2d 776 (1956) and Cal. Sugar & W. P. Co. v. Whitmer Jackson & Co., 33 N.M. 117, 263 P. 504 (1928).

■ Second, the plaintiff argues that the court erred in instructing on the doctrine of assumption of the risk. The objection was not as to form or content but that there was no evidence justifying an instruction on the subject.

The record contains substantial evidence to support the giving of this instruction. The Poes had turned over the safekeeping of their house to the Stalkers, were away from it some five months before the fire and gave telephone instructions as to what the Stalkers should do in order to protect the house from the hazards of winter, giving detailed instructions as to how this should be done. From his own testimony, it is obvious that Mr. Poe realized there might be danger if the dampers were not in an open position. There is no evidence in the record that Mr. Poe did anything further, after the telephone call, toward determining that the furnace had been put in proper order. There was evidence which would permit the jury to find Mr. Poe had actual knowledge that leaving the dampers closed involved the danger of an overheated furnace. This knowledge requirement would be satisfied if either the Poes or the Stalkers, as agents of the Poes, knew or should have known of the danger. The second point is without merit.

■ By his third point plaintiff seeks error in the court's finding as a matter of law that any act or omission of the Stalkers was the act or omission of the Poes. From the factual situation we conclude that an agency relationship existed between the Poes and the Stalkers. The court determined this as a matter of law and so instructed the jury. Plaintiff objected to the instruction for the reason that the relationship was a factual matter to be determined by the jury but submitted no instruction on

the issue. Plaintiff does not complain as to the form or content of the instruction—only that it was unsupported by the evidence. As to the latter, we disagree. With respect to the care of the furnace, Mr. Poe gave specific, detailed instructions to his daughter for winterizing the home. Whether the Stalkers be considered agents or servants of the Poes is of little import. Under the facts, the doctrine of respondeat superior applies and the acts or omissions of the Stalkers were imputed to the Poes. McCauley v. Ray, 80 N.M. 171, 453 P.2d 192 (1968); Bailey v. Jeffries-Eaves, Inc., 76 N.M. 278, 414 P.2d 503 (1966). We conclude that, under the evidence, the court properly determined the relationship between the Stalkers and the Poes as a matter of law and plaintiff's third point is *without merit.*

■ By its fourth and fifth points against Miller, plaintiff urges that the court erred in refusing to permit its expert to testify relative to a dangerous installation while permitting defendant's expert to testify relative to a safe installation. The testimony had to do with opinions as to the safe distance between the furnace or its duct work and adjacent woodwork constituting a dangerous or safe installation. The court sustained a defense objection to such evidence at two points during the testimony of one of plaintiff's experts. However, immediately after the first objection, this same expert answered the question, phrased somewhat differently and without objection. Additionally, substantially the same evidence had been adduced earlier from another of plaintiff's experts. Error, if any, was therefore harmless. See Crouch v. Most, 78 N.M. 406, 432 P.2d 250 (1967); Bolen v. Rio Rancho Estates, Inc., 81 N.M. 307, 466 P.2d 873 (Ct.App.1970).

■ Further possible causes of the fire were fully explored by witnesses from both sides and we cannot say that the experts for either side testified beyond their established qualifications or that the court unfairly restricted their testimony. We find no abuse of the court's discretion or preju-

dicial error. The admission or exclusion of expert testimony is peculiarly within the discretion of the court and its decision will not be reviewed unless the exercise of that discretion has been abused. Lurie v. Sweedler, 3 Conn.Cir. 17, 206 A.2d 449 (1964); 5A C.J.S. Appeal and Error §§ 1748–1749 (1958).

As to the opinion elicited from defendant's expert, see Lopez v. Heesen, 69 N.M. 206, 365 P.2d 448 (1961); Lopez v. Maes, 81 N.M. 693, 472 P.2d 658 (Ct.App.1970).

■ By its sixth and last point plaintiff objects to the court's permitting one witness, an official of the State of New Mexico with 20 years experience in plumbing and gas installations, to testify that he had never heard of a fire starting because of hot duct work igniting framework. We do not deem this evidence inadmissible or prejudicial. Lopez v. Heesen, *supra*; Lopez v. Maes, *supra*; Nubbe v. Hardy Continental Hotel System of Minn., 225 Minn. 496, 31 N.W.2d 332 (1948).

The judgment is affirmed.

It is so ordered.

WOOD, C. J., concurs.

SUTIN, Judge (dissenting in part).

I concur in the majority opinion which affirms the judgment in favor of Lennox Company, Inc. I dissent as to affirmance of the judgment in favor of Miller Metal Company because it was reversible error to instruct the jury on issue of assumption of risk. The Poes and the Stalkers will be referred to as Poe.

The trial court instructed the jury on the defense of assumption of risk. U.J.I. 13.-10. To warrant this instruction, there must be substantial evidence that (1) a dangerous situation existed; (2) that Poe knew of such dangerous situation; (3) that Poe voluntarily exposed the Poe home to the danger and was damaged thereby. Poe's knowledge can be actual knowledge of the dangerous situation, or, if the risk is obvious, he is presumed to know the danger.

Miller installed a gas furnace in the garage of the Poe residence. It was enclosed in a closet without doors on the front of the closet. There was duct work leading from the furnace. The residence was unoccupied from July 30, 1966 to the date of the fire on January 2, 1967. During his absence, Poe told his daughter to winterize the house, to open the dampers so that the heat would get into the house during the winter. The dampers were not opened by the daughter. The heat was left at 60°. There is no evidence that Poe knew the heat in the furnace with the dampers closed could reach 400° or more, and ignite the wooden frame 3/8″ from the furnace. This was not an obvious risk.

Poe and Stalker were retired men. There was no evidence of any occupation, nor any knowledge of causes of fire from a heated furnace with dampers closed, nor any experience as gas experts or with furnace operations.

A careful review of the record discloses no evidence, nor any facts from which reasonable inferences can be drawn that Poe knew of the dangerous situation, i. e., that a furnace with 60° heat and dampers closed would reach a heat of 400° or more, and ignite a wood frame 3/8″ from the furnace. No questions were asked Poe on the subject. Stalker was physically unable to appear to testify. Poe had no actual knowledge, and the risk was not obvious to any ordinary person. Without such knowledge, Poe could not voluntarily expose the property to the danger. There is no circumstantial evidence which imposes on Poe the doctrine of assumption of risk.

In order for Poe to assume the risk, the *specific* danger must be known. Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969). An ordinary layman does not know that failure to open dampers will cause a fire. That a fire will take place is as far from his mind as stardom. He ordinarily believes that to open dampers to allow heat in the house will prevent pipes from freezing; that extreme cold weather will not physically damage his home.

Miller seeks to avoid reversal by contending Poe failed to demonstrate how prejudice resulted. Reversible error arises where no evidence supports an instruction on assumption of risk. Stephens v. Dulaney, 76 N.M. 181, 413 P.2d 217 (1966).

Miller further contends that since Poe did not object to instructions on contributory negligence, no prejudice resulted from submission of an instruction on assumption of risk. This contention is based on Restatement of Law of Torts, Second, § 466 (a), Comment (d), that contributory negligence and assumption of risk overlap, and the plaintiff may be barred from recovery by either or both; that "had the jury made a determination that the Poes or Stalkers assumed the risk, such a determination would have necessarily involved a determination that said persons were also contributorily negligent." This argument is speculative, but it is answered to the contrary in Stephens v. Dulaney, 78 N.M. 53, 428 P.2d 27 (1967), where the court said:

Conduct under certain facts and circumstances may amount to an assumption of risk as well as contributory negligence. [Citing cases]. However, assumption of risk and contributory negligence are not synonymous, but are separate and distinct defenses. [Citing cases].

The error was not harmless.

Furthermore, the Supreme Court has granted certiorari in three cases involving the defense of assumption of risk. Until a decision is reached, this court should follow the established principles on this subject.