249 So.2d 273 (1971)
Helen Frey ZACHARY et al.
v.
ST. PAUL FIRE & MARINE INS. CO. et al.
No. 8326.
Court of Appeal of Louisiana, First Circuit.
May 31, 1971.
Rehearing Denied June 30, 1971.
*274 H. Alva Brumfield, and Sylvia Roberts, Baton Rouge, for appellants.
Roger M. Fritchie of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellees.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
TUCKER, Judge.
This is a suit by the plaintiff-appellants, Helen Frey Zachary and her husband, Harry G. Zachary, as head and master of the community of acquets and gains between them, against the defendant-appellees, Dr. Alvin Stander, hereinafter sometimes referred to as the defendant, and his insurer, St. Paul Fire and Marine Insurance Company, for damages on account of personal injuries and special damages allegedly incurred as a result of the performance of surgical operation on Mrs. Zachary by the defendant for the renewal of a ruptured intervertebral disc on November 2, 1964. The suit is based upon the alleged malpractice and negligence of the defendant in accomplishing the surgical procedure. St. Paul is made a party defendant as the insurer of Dr. Stander.
Mrs. Zachary, then fifty-eight years of age, with arteriosclerosis of her arteries and veins, and a history of hypertension, and with complaints of chest, low back and abdominal pains, was admitted to the hospital and referred by her internist, Dr. Sidney G. Mack, to the defendant for the diagnosis of a possible herniated disc on October 14, 1964. She was treated conservatively in the hospital by the defendant and discharged on October 27, 1964. She was readmitted on the following day after a recurrence of pain, and Dr. Stander performed a myleogram on her, confirming a defect at the level of the L-4 and L-5 interspaces on the left side of her back. The defendant advised surgery to correct this defect, and plaintiff consented. Surgery was scheduled for November 2, 1964, with Dr. Philip Castro assisting, and Dr. D. D. Barnette as the anesthetist.
In the course of the surgery to remove the ruptured disc on November 2, 1964, and about five to ten minutes prior to completion of the surgery, plaintiff sustained a severe drop in blood pressure, with shock attendant thereto, causing Dr. Stander to close the operation swiftly and seek consultation with Drs. Sabatier and Beskin, who happened to be in the corridor outside the operating room. In her state of shock plaintiff's systolic pressure had dropped from 120 to 60. In the course of the emergency interim, beginning at the time plaintiff's systolic pressure had dropped to 100, she was administered nine bottles of whole blood (4500 c.c.'s), or approximately one-third of her entire blood supply (Tr. 188-190).
Drs. Sabatier and Beskin examined Mrs. Zachary and found a mass in the upper quadrant of her abdomen, which suggested intra-abdominal hemorrhage to them. Dr. Sabatier opened the peritoneal cavity, and discovered a hemorrhage emanating from the right iliac artery and left iliac vein. Dr. Sabatier attempted to suture the torn artery, but no peripheral pulse could be obtained after so doing. At this time Dr. Beskin was requested to resect the damaged artery and replace it with a graft. He did this, and afterward a good peripheral pulse was noted. The operation was then closed, and the plaintiff was removed to the recovery *275 room. She recovered rapidly from the surgery and was discharged. Although she does not enjoy good health at this time, it is attested by her personal physician, Dr. Mack, that her circulation is better than ever due to the artery graft.
The pathology report on the piece of artery removed indicated that the tissue from the artery was arteriosclerotic. At the point of the artery's rupture an atheromatous plaque had formed, causing it to become calcified and brittle without its normal elasticity (Exhibit 19 and Tr. 162).
From a judgment for the defendant in the trial court the plaintiffs appealed, alleging that the court erred (1) in failing to apply the doctrine of res ipsa loquitur, and in not making a finding of negligence on the part of Dr. Stander; and (2) in the alternative, conceding arguendo that Dr. Stander was not negligent in the manner, in which the disc operation was performed, in not finding him negligent in failing to disclose to plaintiff the risk of laceration of the iliac artery and vein.
The doctrine of res ipsa loquitur, does not apply in this case. Plaintiff's own witness, Dr. Joseph Sabatier, testified that in his procedure for Mrs. Zachary's disc surgery Dr. Stander exercised "the degree of skill ordinarily employed under similar circumstances by members of his profession in good standing in the same community or locality," and that he used "reasonable care and diligence along with his best judgment in the application of his skill to the case." Meyer v. St. PaulMercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954). There is ample supporting evidence to the same effect by Dr. Philip Castro who assisted Dr. Stander in Mrs. Zachary's surgery, and testified that he saw Dr. Stander do nothing unusual at all during the surgery (Tr. 223-224); that he did not note any excessive force being used by Dr. Stander in the removal of the disc material (Tr. 225); and that in his experience disc material is frequently difficult to remove (Tr. 227). Dr. John Jackson, Chief Neurosurgeon of Ochsner Clinic, also testified that the procedures used by Dr. Stander in his surgery upon Mrs. Zachary were exactly the same ones he uses in the four to six disc operations he performs each week. All physicians are agreed that vascular injury, although an infrequent occurrence (Tr. 251, 228, 139, 216) is a common hazard in this type of surgery (Tr. 125-126, 131-132, 210-212, 162, 217) and that the mere occurrence of a rupture of an artery is no evidence per se of lack of skill or utilization of improper procedures (Tr. 137-138). All doctors are agreed that it is impossible to know in advance where a plaque may occur in the blood vessels (Tr. 143, 207).
There is only a thin layer of tissue between the disc itself and the artery, and in this case, due to the arterio-sclerotic nature of the artery at the point of surgery, it was probably adhering to the disc wall (Tr. 169). There is no disagreement to the conclusion that the artery sustained a tear or laceration during the intervertebral surgery, but Dr. Stander testifies that in his opinion the rupture of the iliac artery occurred at that particular site due to the fact that it was brittle. It adhered to the disc wall and broke when he was removing the interspace material, thus causing the disc wall to move (Tr. 251-252). He testified that he experienced only slight difficulty in removing the disc material (Tr. 248). He testified additionally that the artery could have fractured without his having cut it or hit it directly, and that the force he used in removing the disc material was not such that it could have penetrated the disc wall (Tr. 252).
Dr. Jackson testified that, since this portion of the operation to remove the disc material, is in effect a "blind" operation, it is quite possible that Mrs. Zachary's artery may have invaded the disc space itself (Tr. 215, 217).
On the issue of negligence the evidence is overwhelming that the defendant is an able and competent expert in the field of orthopedics; that he had the necessary *276 skill and experience to perform the type of operation in question; that he actually used the proper and accepted techniques and procedures in the operation on Mrs. Zachary. As a matter of fact there is no evidence worthy of note pointing to any negligence on the part of the defendant or any of his associates under this supervision and control. Particularly, do we note Dr. Stander's skill in recognizing the trauma caused by the artery laceration, and his immediate emergency measures to save Mrs. Zachary's life, which have actually resulted in her having much better blood circulation than she had prior to the surgery.
As an addendum, not alluded to in the pre-trial conference nor expressly addressed in the trial, the plaintiffs claim they were not informed by Dr. Stander of the special risks of artery damage prior to the surgery. The evidence indicates there were conversations between the defendant and the Zacharys. Dr. Stander said he could not remember ever having operated on a person, except in an emergency, without first informing him of the various risks involved such as not waking up from the anesthetic, possibility of infection, nerve root damage, and "then there is the risk of vascular injury" (Tr. 94-95). He admitted he had no independent, special and positive recall with reference to the subjects included in his conversation with the Zacharys. However, the record does not reflect any evidence which indicates their consent would have been withheld to the surgery if they had known vascular injury might result.
Other than the lengthy scar on her abdomen, not of grave cosmetic importance in a woman of 58 years, and the two consultation fees of Drs. Sabatier and Beskin of $50.00 each, Mrs. Zachary has suffered no untoward ill effects from the vascular accident which brought on the additional abdominal surgery.
The evidence amply supports the trial court's view that in Dr. Stander's professional relationship with Mrs. Zachary's case from diagnosis to discharge, he exhibited the highest standard of medical and surgical care and proficiency recognized in the subject community.
The judgment of the trial court will, therefore, be affirmed at plaintiffs' costs.
Affirmed.