This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MATT McCANN and**
**STEPHANIE McCANN,**

     Plaintiffs-Appellees,

v.                           **No. 32,444**

**ST. VINCENT HOSPITAL,**
**a New Mexico Non-Profit Corporation,**

     Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Stephen Durkovich
Albuquerque, NM

Jane B. Yohalem
Santa Fe, NM

Patrick A. Casey
Santa Fe, NM

Egolf Law Firm, LLC
Brian Egolf
Santa Fe, NM

for Appellees

Hinkle, Hensley, Shanor & Martin, LLP
William P. Slattery
David B. Lawrenz

Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}    Plaintiff Matt McCann was injured following a laminectomy and discetomy to repair a herniated disc in his back.[1]  Plaintiff prevailed in his suit against Defendant St. Vincent Hospital.  Defendant raises two issues on appeal.  First, Defendant argues that the district court erred in granting partial summary judgment in favor of Plaintiff on the issue of Dr. Hal Hankinson's negligent surgical technique.  Second, Defendant argues that the district court erred in refusing to strike testimony by treating physician Dr. Mark Reininga because Dr. Reininga's opinions were not disclosed prior to trial. We hold that the district court properly concluded that the affidavit offered in support of Defendant's response to Plaintiff's summary judgment motion was conclusory.  We further conclude that the district court did not abuse its discretion in concluding that Defendant waived its objections to Dr. Reininga's testimony by waiting until after the witness was excused and a break in the proceedings to request a mistrial. Accordingly, we affirm.

**BACKGROUND**

---

[1]Although McCann's wife also asserted a claim, for simplicity we refer to McCann by the singular term "Plaintiff" throughout this Opinion.

{2} Plaintiff began treatment for chronic back pain with Dr. Hankinson in April 2008 following a fall from his porch and a subsequent aggravation of his injuries. Dr. Hankinson diagnosed Plaintiff as having a herniated disc in the L4-5 region of his back and recommended a laminectomy and discectomy to remove the herniated portion of the disc. Dr. Hankinson performed the surgey. Dr. Hankinson noted in his operative notes that Plaintiff lost 500cc's of blood during the procedure and ordered that Plaintiff receive an extra liter of fluid in order to maintain his heart rate during the surgery.

{3} Following surgery, Plaintiff complained of severe abdominal pain. Plaintiff was given multiple doses of pain medication over the course of the following day. Plaintiff's nurses also noted that he was pale and sweating profusely. Plaintiff began experiencing respiratory distress and his condition continued to deteriorate until a "code" was called. The attending physician sent Plaintiff for a CT scan to determine whether Plaintiff suffered a vascular injury during the surgery. The CT scan revealed that blood was collecting in Plaintiff's abdomen. Plaintiff was diagnosed with a "[p]erforation of [the] posterior right iliac artery and inferior vena cava" as a result of the surgery. Plaintiff was returned to surgery to drain the hematoma and repair the vascular damage.

{4}     Plaintiff brought suit against Defendant alleging, among other things, that Dr. Hankinson caused Plaintiff's injuries by negligently performing the laminectomy and discectomy. Plaintiff successfully moved for summary judgment on the issue of Dr. Hankinson's negligence. The case proceeded to trial on the remaining issues and the jury returned a verdict in favor of Plaintiff.

{5}     On appeal, Defendant argues that the district court erred in granting summary judgment on the issue of Dr. Hankinson's negligence, denying its motion for reconsideration, and in declining to strike testimony at trial by Plaintiff's treating physician regarding his opinion that Plaintiff suffered an anoxic brain injury. We review these issues in turn and more fully develop the facts pertaining to these issues in the respective analyses.

**Summary Judgment**

{6}     Plaintiff moved for summary judgment on the separate theories that Dr. Hankinson was negligent (1) in his surgical technique, (2) in ignoring Plaintiff's excessive bleeding during the surgery, and (3) in failing to adequately monitor Plaintiff post-operatively. The district court granted summary judgment on the issue of Dr. Hankinson's negligent surgical technique because the expert affidavit attached to Defendant's motion was conclusory and therefore did not establish an issue of material fact for trial. Defendant argues on appeal that the district court's decision is

inconsistent with the principles underlying summary judgment in New Mexico because it held Defendant's expert's affidavit to a higher standard and did not construe all reasonable inferences in Defendant's favor.

{7} We review summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* ¶ 6; *see* Rule 1-056(C) NMRA. The appellate courts "view the facts in a light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). The party moving for summary judgment must make a prima facie showing and come forward with "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 5, 111 N.M. 670, 808 P.2d 955. "Once this prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). Below we set out the undisputed material facts established by Plaintiff and the response by Defendant's expert witness.

{8} Plaintiff entered St. Vincent Hospital for a "single-level laminectomy and discectomy." The purpose of the procedure was to remove the nucleus pulposus which had herniated between Plaintiff's L4 and L5 discs. Plaintiff argued that Dr. Hankinson's actions fell below the standard of care because he went too deep with his instruments and he ignored the differences between the tissue he was supposed to remove and the tougher tissue protecting the iliac artery and vena cava. Plaintiff attached affidavits by two neurosurgeons, one of whom routinely performs laminectomies and discectomies. Plaintiff's experts opined that Dr. Hankinson could not have perforated the iliac artery and vena cava without first penetrating Plaintiff's annulus fibrosus and anterior longitudinal ligament. The experts' affidavits further stated that Dr. Hankinson should have known he had penetrated these separate tissues because his instruments would have been deeper than normal and the tissues have a tougher consistency than the nucleus pulposus, which both experts described as having a "crabmeat-like" texture.

{9} In response to Plaintiff's motion, Defendant proffered an affidavit by nuerosurgeon Dr. Andrea Halliday. Dr. Halliday disputed that Dr. Hankinson's surgical technique fell below the standard of care. In relevant part, Dr. Halliday opined, based on her medical education, training, and experience working as a neurosurgeon for over fourteen years, that the injury Plaintiff experienced is a "known

complication of a laminectomy at the L4-5 level, particularly when the surgeon uses a mid-line incision, as Dr. Hankinson did." Similarly, Dr. Halliday opined that this type of injury can occur "even with proper surgical technique and in the absence of any negligence by the surgeon."

{10} We agree with the district court that Dr. Halliday's affidavit was insufficient to establish that an issue of material fact existed. Rule 1-056(E) provides that the non-movant's affidavit "must set forth specific facts showing that there is a genuine issue for trial." In the context of expert witnesses, this Court has stated that "[a] satisfactory explanation of how the expert arrived at his [or her] opinion must be given, or the opinion is not competent evidence." *Pedigo v. Valley Mobile Homes, Inc.*, 1982-NMCA-066, ¶ 7, 97 N.M. 795, 643 P.2d 1247; *Galvan v. City of Albuquerque*, 1973-NMCA-049, ¶ 5, 85 N.M. 42, 508 P.2d 1339 ("An expert witness must be able to give a satisfactory explanation as to how he [or she] arrives at his [or her] opinion. Without such an explanation the opinion is not competent evidence." (citation omitted)).

{11} In this case, Dr. Halliday's affidavit merely stated her opinion that Dr. Hankinson's surgical technique met the standard of care for this type of procedure. The affidavit did not specifically dispute that Dr. Hankinson went too deep with his instruments, removed tissue extraneous to the nucleus pulposus, or perforated

Plaintiff's iliac artery and vena cava. Instead, Dr. Halliday stated that perforation of these vessels is a known complication of this type of procedure and that she disagreed "that it was medical negligence for Dr. Hankinson to injure the right iliac artery and vena cava." Dr. Halliday provided no explanation of how or why she arrived at this conclusion. *Cf. Sewell v. Wilson*, 1982-NMCA-017, ¶ 23, 97 N.M. 523, 641 P.2d 1070 (stating that a "medical expert must . . . be able to testify as to how and why he [or she] arrives at an opinion that a . . . physician's conduct has been substandard"). Furthermore, Defendant's argument that it was entitled to reasonable inferences is unavailing where the affidavit only provides Dr. Halliday's conclusion that Dr. Hankinson's surgical technique met the requisite standard of care without any factual support for her opinion. Reasonable inferences flow from facts, not conclusions. *Romero*, 2010-NMSC-035, ¶ 10 ("An inference . . . is a logical deduction from facts proved and guess work is not a substitute therefor." (internal quotation marks and citation omitted)).

{12} The testimony of Dr. Halliday that Defendant belatedly submitted with its motion for reconsideration of the summary judgment demonstrated the kind of detail that might have provided the factual support for Dr. Halliday's opinions if that detail had been included in her affidavit. For example, Dr. Halliday testified in her post-summary judgment deposition that "[n]ot all herniations are very soft like crab meat"

7

and that "[s]ome of them can be quite fibrous." She then provided factual detail explaining why she believed that at least some of Plaintiff's disc material would likely have been fibrous and tough. She explained that these facts explained why she disagreed with Plaintiff's expert that "Dr. Hankinson should have noticed a difference in feel between the nucleus pulposus and the annulus." Because Dr. Halliday's affidavit did not contain this kind of factual support for her opinions, the district court properly concluded that the affidavit was insufficient to counter Plaintiff's prima facie showing in support of summary judgment. Accordingly, the district court properly granted summary judgment on this issue.

**Motion for Reconsideration**

{13} Defendant argues that the district court erred in denying its motion for reconsideration of the court's grant of partial summary judgment. Defendant filed the motion two days before the jury trial was set to begin. In the motion, Defendant attached deposition testimony by Dr. Halliday explaining in more detail why she concluded that Dr. Hankinson met the standard of care in performing the procedure. Defendant took Dr. Halliday's deposition—its own expert witness— after the motion for summary judgment was granted. Defendant argues on appeal that the district court erred in declining to review whether Dr. Halliday's deposition testimony established an issue of material fact because it concluded that the motion for reconsideration was

untimely. We review the denial of a motion to reconsider for abuse of discretion. *Nance v. L.J. Dolloff Assoc., Inc.*, 2006-NMCA-012, ¶ 23, 138 N.M. 851, 126 P.3d 1215

**{14}** Defendant's argument misconstrues the district court's decision. While the district court did find that the motion was untimely, the primary basis of the district court's decision was that Defendant was attempting to get "two bites at the apple" by presenting evidence in the motion for reconsideration that should have been available to it at the time it filed its response to the summary judgment motion. A district court does not abuse its discretion in denying a motion to reconsider where new evidence presented in the motion to reconsider was previously available to the party when it filed its response to the summary judgment motion. *Id.* ¶ 24; *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 35, 148 N.M. 627, 241 P.3d 628. Defendant offers no argument as to why the facts elicited during its subsequent deposition of Dr. Halliday were unavailable at the time it filed its response to the summary judgment motion. Accordingly, the district court did not abuse its discretion in refusing to consider the new evidence presented and in denying the motion to reconsider.

**Dr. Reininga's Testimony**

**{15}** Defendant argues that the district court erred in denying its motion to strike the testimony of Dr. Reininga regarding his opinion that Plaintiff suffered an anoxic brain

9

injury as a result of the surgery.  We review a district court's decision to deny a motion to strike testimony for abuse of discretion.  *State v. McKnight*, 1915-NMSC-057, ¶ 14, 21 N.M. 14, 153 P. 76.  "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{16}    Plaintiff was referred to Dr. Reininga shortly after the surgery for pain management.  Dr. Reininga was subsequently designated in Plaintiff's expert witness list as a treating physician.  Plaintiff did not disclose the content of Dr. Reininga's expected trial testimony in his expert witness list other than to state that "[t]reating physicians . . . may offer expert opinions about [Plaintiff's] treatment and the cause of his sequelae [sic]."

{17}    At trial, Dr. Reininga testified to his opinion that Plaintiff suffered from an anoxic brain injury due to the deprivation of blood to his brain following the surgery.  Defendant objected throughout Dr. Reininga's testimony to the documents Dr. Reininga was relying on because Dr. Reininga did not have these documents available to him at the time he was treating Plaintiff, nor were the documents or his opinions disclosed in the expert witness disclosures or during Dr. Reininga's deposition.  The district court ruled that Plaintiff needed to lay a foundation for the testimony and, upon further questioning, and a renewed objection, the court stated that it would

10

"allow him to testify to what he believes [the documents] indicate concerning future treatments that [Plaintiff] will have." Plaintiff's counsel then elicited testimony from Dr. Reininga about what one of the documents showed, Defendant objected on the same basis, and the court stated, "You still have not completely laid the foundation for this witness to testify, but I'm going to let you use this as the introductory." Plaintiff's counsel elicited more testimony from Dr. Reininga about other documents that were the subject of Defendant's objection. After the court's ruling, Dr. Reininga offered his opinion regarding the cause of Plaintiff's anoxic brain injury.

{18} Following the conclusion of Plaintiff's direct examination of Dr. Reininga, Defendant's cross-examination, and Plaintiff's re-direct, Defendant raised one small issue regarding how Plaintiff and his ex-wife should be referred to during the proceedings before the court then broke for lunch. Upon returning from lunch, Defendant moved for a mistrial on the basis that Dr. Reininga's opinions were not disclosed prior to trial. The district court observed that it had asked Plaintiff's counsel "at least twice . . . to get [Dr. Reininga] to say how [review of the documents] affected his treatment, and he never once said." The court then stated that "[h]ad a motion been made at the close of his testimony to strike all of his testimony about injury to the brain, I would have done so because you didn't lay a foundation." However, because Defendant did not make a motion to strike at the close of the testimony,

Defendant waived it. Notably, the district court never suggested that it would have granted a timely motion for mistrial.

**{19}** Defendant provides no citation to authority to support its assertion that waiting until after a witness has been excused and after a significant break in the proceedings, the district court's decision to deem the motion to strike waived was contrary to law or the facts and circumstances of the case. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority). To the contrary, it was well within the district court's discretion to deny the motion. *See State v. Romero*, 1930-NMSC-005, ¶¶ 7-8, 34 N.M. 494, 285 P. 497 (stating that where evidence is admitted subject to a foundation being established, an objection to the evidence must be renewed). While the dissent is of the view that the district court had a valid rationale for striking the testimony or granting a mistrial, we conclude that the district court had an equally compelling reason for denying the motion. "When there exist reasons both supporting and detracting from a district court decision, there is no abuse of discretion." *Clark v. Clark*, 2014-NMCA-030, ¶ 8, 320 P.3d 991 (alteration, internal quotation marks, and citation omitted), *cert. denied*, 2013-NMCERT-012, 321 P.3d 126. Indeed, "[t]his kind of close decision is the very essence of judging, and we will not disturb it on appeal just because the court could

have reached, but was not required to reach, a different result." *Boutz v. Donaldson*, 1999-NMCA-131, ¶ 6, 128 N.M. 232, 991 P.2d 517.

**CONCLUSION**

{20}    For the foregoing reasons, we affirm the district court.

{21}    **IT IS SO ORDERED.**

                **CYNTHIA A. FRY, Judge**

**I CONCUR:**

**LINDA M. VANZI, Judge**

**MICHAEL E. VIGIL, Judge (dissenting).**

**VIGIL, Judge (dissenting).**

{22}     The question of whether Dr. Halliday's affidavit is deficient as a matter of law in this medical malpractice case is, in my view, a matter of first impression. The majority holds that the affidavit is deficient, thereby establishing new grounds to invalidate an affidavit opposing summary judgment in a medical malpractice case. And it does so in a memorandum without citing to on point New Mexico authority. On the merits, and in light of the public policy in New Mexico favoring trials, I conclude that the affidavit is legally sufficient. *See Romero*, 2010-NMSC-035, ¶ 8 (stating that New Mexico courts "view summary judgment with disfavor, preferring a trial on the merits"). Since the majority disagrees, I dissent.

{23}     In addition, I disagree with the majority's conclusion that it was not error for the district court to deny Defendant's motion for a mistrial or to give a curative instruction following Dr. Reininga's testimony on the basis of waiver. For this additional reason, I dissent.

**Sufficiency of Dr. Halliday's Affidavit**

{24}     Dr. Halliday's qualifications and expertise as a neurosurgeon were not challenged in the district court or on appeal. As it relates to Dr. Hankinson's surgical technique, Dr. Halliday's affidavit states:

> 7.     I was requested by St. Vincent Hospital's attorneys to review those medical records and to evaluate the conduct of Dr. Hal Hankinson, the neurosurgeon who performed a bilateral lumbar

14

laminectomy and discectomy at L4-5 of Mr. McCann and provided post-operative care. I was asked to evaluate whether I believe that Dr. Hankinson met the standard of care applicable to reasonably-qualified hospital neurosurgeons practicing in Santa Fe County, New Mexico.

8. I have also reviewed two affidavits that were prepared in this case by Howard J. Silberstein, M.D. and Kenneth L. Lippow, M.D.

9. Based on my medical education and training and my experience working as a nuerosurgeon for over fourteen years, it is my opinion that Dr. Hankinson met the applicable standard of care in his decisions to perform a bilateral laminectomy and discectomy in his operative techniques, and in his post-operative care.

10. It is my opinion that the type of injury to the iliac artery that Mr. McCann experienced is a known complication of a laminectomy at the L4-5 level, particularly when the surgeon uses a mid-line incision as Dr. Hankinson did in this case.

11. I disagree with the opinions given by Plaintiffs' experts Dr. Silberstein and Dr. Lippow in their affidavits that it was medical negligence for Dr. Hankinson to injure the right iliac artery and vena cava during the laminectomy. This is a known complication that can occur and does occur even with proper surgical technique and in the absence of any negligence by the surgeon.

12. Based on my review of Dr. Hankinson's Operative [N]ote, it is my opinion that nothing unusual occurred during the surgery that should have alerted Dr. Hankinson that there was an injury to the iliac artery or vena cava. The loss of blood during the surgery (about 500 cc according to the Operative Note) was not so abnormal that it should have alerted Dr. Hankinson to the existence of a potential problem.

{25} The majority fails to recognize the difference between an affidavit offered in support of a motion for summary judgment, and an affidavit offered in opposition to a motion for summary judgment in a medical malpractice case. However, there is a

15

difference, and it is significant. A motion *seeking* summary judgment must affirmatively demonstrate, by specific facts, what a doctor did or did not do to deviate from the standard of care. On the other hand, a defendant *opposing* a motion for summary judgment is limited to demonstrating that what he actually did complied with the standard of care. The doctor's conduct is contained in the medical records, and I am unaware of any law which requires an expert to repeat what is contained in those records before the expert can render an opinion based on what is within those records. Here, the factual basis for Dr. Halliday's opinions is the medical records, and her expert opinion is based on her knowledge, experience, and training as a neurosurgeon for over fourteen years. This was sufficient. *See* UJI 13-213 NMRA (stating that "a witness who is qualified as an expert in a subject may be permitted to state an opinion as to that subject"); UJI 13-1101 NMRA (stating that the only way a jury can decide whether a doctor is negligent is from evidence presented by doctors testifying as expert witnesses); *Perkins v. Hansen*, 79 A.3d 342, 345 (D.C. 2013) ("It is well established that a physician's experience may provide a reliable basis for his or her expert opinion."). Moreover, I do not agree that Dr. Halliday was required to dispute, point by point, the factual assertions made by Plaintiffs' experts that are not contained in the medical records.

**{26}** In any event, unlike the majority, I conclude that Dr. Halliday's affidavit contains sufficient facts and specificity to dispute the conclusions of Plaintiffs'

16

experts. Plaintiffs' experts are of the opinion that Dr. Hankinson had to penetrate the annulus fibrosus and anterior longitudinal ligament in order to perforate the iliac artery and vena cava. They add that Dr. Hankinson should have known that his instruments were deeper than normal and that the tissues he removed have a tougher consistency than the tissues he wanted to remove. The implication is that improper surgical technique resulted in penetration of the annulus fibrosus and anterior longitudinal ligament with the result that the iliac artery and vena cava were injured. Dr. Halliday directly disputes the facts by stating that Dr. Hankinson was not negligent in his operative technique, and that "nothing unusual occurred during the surgery that should have alerted Dr. Hankinson that there was an injury to the iliac artery or vena cava." Furthermore, she adds, the injury to the iliac artery and vena cava "is a known complication that can occur and does occur even with proper surgical technique and in the absence of any negligence by the surgeon." Resolving all doubts in favor of Defendant, I conclude that this evidence was sufficient to raise a genuine issue of fact as to whether Dr. Hankinson was negligent in his surgical technique. *See Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 10, 90 N.M. 753, 568 P.2d 589 (reiterating that a party opposing summary judgment "is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists" (internal quotation marks and citation omitted)). I would therefore reverse.

17

{27} Finally, *Pedigo* and *Galvan*, relied on by the majority, are not, on their facts, applicable to this medical malpractice case. In fact, no medical malpractice case on point is cited by the majority in support of its conclusion that Dr. Halliday's affidavit was insufficient to create a triable issue of fact. On the other hand, *Smith v. Klebanoff*, 1972-NMCA-075, 84 N.M. 50, 499 P.2d 368, suggests that Dr. Halliday's affidavit is sufficient. An affidavit very similar to Dr. Halliday's concerning what appears to be an identical (if not similar) operation was deemed to be sufficient to establish that the defendant doctor was not negligent, with the result that summary judgment *in favor of* the defendants was affirmed. *Id.* ¶¶ 11-14; *see* also, *Maxwell v. Women's Clinic, P.A.*, 625 P.2d 407, 410 (Idaho 1981) (concluding that affidavits of medical experts stating that the defendant doctor performed the operation within the standard of care and that the patient's injury is an inherent and unavoidable risk of the surgery properly supported summary judgment in favor of the defendant doctor).

**Erroneous Admission of Undisclosed Expert Testimony**

{28} I also conclude that the district court abused its discretion in denying Defendant's motion for a mistrial and request for a curative instruction that the jury disregard Dr. Reininga's testimony on anoxic brain injury. Admitting the evidence clearly prejudiced Defendant. A significant element of Plaintiff's damages claim was that he suffered a neurologic injury due to oxygen deprivation, and Dr. Reininga's

opinions that oxygen deprivation caused Plaintiff to suffer anoxic brain injury supported that claim.

{29} Defendant repeatedly objected on proper grounds that Dr. Reininga was providing undisclosed opinions on causation of anoxic brain injury based on records not available to him when he was treating Plaintiff for pain management. The district court repeatedly told counsel to lay a proper foundation for the records, but the necessary foundation was not laid. Notwithstanding the proper objections, and the failure to disclose Dr. Reininga as an expert witness or that he would rely on the medical records in his testimony, the district court ruled that Defendant waived the objections because they were not renewed immediately after Dr. Reininga completed his testimony.

{30} As the majority opinion points out, Dr. Reininga's testimony was completed immediately before the lunch break, and the motion for mistrial and request for a curative instruction was made immediately after the lunch break. The district court candidly acknowledged that had a motion to strike all of Dr. Reininga's testimony about injury to the brain at the close of his testimony, "I would have done so because you didn't lay a foundation." However, the motion was denied, because it was made after lunch. No explanation was given by the district court or the majority why making the motion immediately before the lunch break, as opposed to immediately after the lunch break was necessary or required in this case.

{31} The sole authority cited by the majority is *Romero*, which clearly does not apply. In *Romero*, a witness testified to finding a pistol near the scene of a killing, and another witness testified that five months previously the defendant had a pistol of like size and color. 1930-NMSC-005, ¶ 7. The pistol was admitted into evidence with a statement by the trial court that if the pistol was not connected by some other testimony, it would be stricken. *Id*. The defendant never moved to strike, and he never called it to the attention of the trial court that the required connecting testimony was absent. *Id*. Under the circumstances, the defendant was deemed to have waived his argument that the evidence was improperly admitted. *Id*. That is hardly the case here.

{32} Under the circumstances in this case, I conclude it was an abuse of discretion to deny the motion for a mistrial or to instruct the jury to disregard Dr. Reininga's testimony. Since the majority disagrees, I dissent for this reason as well.

**Conclusion**

{33} I dissent. In addition to the substantive reasons for dissenting discussed above,

I would have granted Defendant's request for oral argument, and I would have made this a formal opinion.

_____
**MICHAEL E. VIGIL, Judge**