In re D & M, INC., aka Talk of Town, TOT, and Class Act, Western Coin Machines, Inc., dba Western Coin, a New Mexico corporation, Debtors.

D & M, INC., and Western Coin Machines, Inc., Plaintiffs,

v.

UNITED NEW MEXICO BANK AT GALLUP, fka First State Bank of Gallup, et al., Defendants.

Bankruptcy No. 11–87–01333 M A.
Adv. No. 88–0126 M.

United States Bankruptcy Court,
D. New Mexico.

May 9, 1990.

Donald D. Becker, Albuquerque, N.M., for plaintiffs.

Gail Gottlieb, Albuquerque, N.M., for United NM at Gallup.

O.R. Adams, Jr., Albuquerque, N.M., for Maloof & Quality.

Allan L. Wainwright, Albuquerque, N.M., for NM Beverage.

Michael H. Hoses, Albuquerque, N.M., for Premier Dist.

Keith Franchini, Albuquerque, N.M., for SW Dist.

Gerald B. Richardson, Sp. Asst. Atty. Gen., NM Taxation and Revenue Dept., Santa Fe, N.M.

Sandra Hayes, Sp. Asst. U.S. Atty., Albuquerque, N.M.

Daniel J. Behles, Albuquerque, N.M., for Parish.

Max W. Shepherd, Albuquerque, N.M., for W. Terrazas.

P. Diane Webb, Albuquerque, N.M., Asst. U.S. Trustee.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on March 7, 1990, for presentment of a judgment submitted by the debtors. The two issues before the Court are the priority of claims to Liquor License Number 1429 and the effect of the Thirty Day Credit Law, N.M.S.A. § 60–7A–9 (Repl.Pamp.1987), on the liquor wholesalers' liens. Having considered the arguments of counsel, legal memoranda submitted by the parties, having consulted the appropriate authorities and being otherwise fully informed and advised, the Court issues this memorandum opinion.

## FACTS

A complaint to determine value, priorities, and extent of liens; allowance or disallowance of secured claims; and sale of property pursuant to § 363 out of the ordinary course of business was filed May 16, 1988. The liquor license was allowed to be sold free and clear of liens, pursuant to 11 U.S.C. § 363 by order of this Court filed March 6, 1989. United New Mexico Bank at Gallup (bank) was allowed to bid a portion of its claim to acquire some or all of the assets being sold. The bank had perfected a security interest in the liquor license by filing a financing statement with the New Mexico Secretary of State on April 26, 1985. A portion of the proceeds from the sale, in the amount of $34,000.00, were ordered to be segregated pending the decision of this Court on the claimed priority of the New Mexico Taxation and Revenue Department, Quality Import Company, and Joe G. Maloof & Company (wholesalers), or if the bank acquired the liquor license, it would refund this sum of money to these parties if their liens were determined to have priority. The liens of the parties attached to the proceeds of the sale as set forth in the March 6, 1989, order. The State of New Mexico's Alcohol and Gaming Division was authorized by this Court to transfer Liquor License Number 1429 free and clear of all liens or claims of liquor wholesalers or the New Mexico Department of Taxation and Revenue. On March 7, 1989, the real estate, chattels and liquor license were sold at auction. United New Mexico Bank was the highest bidder and acquired the liquor license. On August 7, 1989, a partial settlement agreement was filed resolving all of the pending issues except the priority of claims to Liquor License Number 1429, and the effect of the Thirty Day Credit Law on the wholesalers' liens.

## DISCUSSION

### A. Priority of Claims to Liquor License Number 1429

The bank alleges that its lien has priority over debts to liquor wholesalers arising after April 26, 1985, as its security interest was perfected on that date. Further, the bank alleges that the financing statement was filed prior to the date all of the unpaid claims of either wholesaler originated, with the exception of the sum of $264.70 which is shown as dated April 2, 1985, in favor of Joe G. Maloof & Company. The wholesalers claim priority over the bank, regardless of when it perfected its lien, alleging that the New Mexico legislature statutorily created a priority lien for wholesalers, the

payment of which is a condition precedent to the transfer of liquor licenses.

The applicable authority is set forth in N.M.S.A. § 60–6B–3(E) (Repl.Pamp.1987):

Transfer of licenses.

E. The transfer, assignment, sale or lease of any license shall not be approved until the director is satisfied that all wholesalers who are creditors of the licensee have been paid or that satisfactory arrangements have been made between the licensee and the wholesaler for the payment of such debts. Such debts shall constitute a lien on the license, and the lien shall be deemed to have arisen on the date when the debt was originally incurred.

The interpretation of this statute was set forth in *In re What D'Ya Call It, Inc.*, 105 N.M. 164, 730 P.2d 467 (1986). The New Mexico Supreme Court held:

The requirements of Section 7–1–38 and general lien law do not apply to claims made under Section 60–6B–3(E). A lien pursuant to Section 60–6B–3(E) has a superpriority status over other lienholders, including the tax lien in favor of the State, unless the latter liens were perfected under Section 7–1–38 or under applicable general law prior to the date the licensee incurred debts owed to wholesaler creditors.

*Id.* at 165, 730 P.2d at 468.

The bank argues that the above language in *What D'Ya Call It* describing "latter liens" includes other perfected security interests, and concludes that its security interest was perfected first by filing on April 26, 1985, and therefore has priority over the wholesalers' liens arising after that date under the general Uniform Commercial Code priority rule, N.M.S.A. § 55–9–312(5)(a) (Repl.Pamp.1987).[1] The Court disagrees.

▪ This Court's interpretation of N.M.S.A. § 60–6B–3(E) (Repl.Pamp.1987) and *In re What D'Ya Call It, Inc.*, 105 N.M. 164, 730 P.2d 467 (1986) is that liquor wholesalers have a superpriority lien over all lien holders, with the exception of the New Mexico State Taxation and Revenue Department, if the tax lien is perfected pursuant to N.M.S.A. § 7–1–38 (Repl.Pamp. 1988).[2] The tax lien is effective as of the date the notice is filed. *What D'Ya Call It*, 105 N.M. at 165, 730 P.2d at 468. Section 60–6B–3(E), on the other hand, does not require notice of the lien to be filed to perfect the liquor wholesaler's lien. *Id.* Automatic perfection of the wholesaler's lien occurs on the date the debt is incurred. The statute allows a wholesale liquor distributor to forego the requirement of filing a financing statement each time a credit sale is made to a retail distributor. It does not, however, allow the wholesaler to claim priority for each subsequent sale as of the date of the first transaction. Instead, each separate credit sale creates a separate lien. All liens other than tax liens become subordinate to the wholesaler's liens regardless of the date of perfection. "General lien law do[es] not apply to a claim made under

---

1. Priorities among conflicting security interests in the same collateral.

   (5) In all cases not governed by other rules stated in this section ... priority between *conflicting security interests in the same collateral* shall be determined according to the following rules:

   (a) conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection;

   N.M.S.A. § 55–9–312(5)(a) (Repl.Pamp.1987).

2. Notice of lien.

   A notice of the lien provided for in Section 7–1–37 NMSA 1978 may be recorded in any county in the state in the tax lien index established by Sections 48–1–1 through 48–1–7 NMSA 1978, and a copy thereof shall be sent to the taxpayer affected. Any county clerk to whom such notices are presented shall record them as requested without charge. The notice of lien (a) shall identify the taxpayer whose liability for taxes is sought to be enforced, and the date or approximate date on which the tax became due; and (b) shall state that the State of New Mexico claims a lien for the entire amount of tax asserted to be due, including applicable interest and penalties. Recording of the notice of lien shall be effective as to both real and tangible personal property.

   N.M.S.A. § 7–1–38 (Repl.Pamp.1988).

Section 60–6B–3(E)." *What D'Ya Call It*, 105 N.M. at 165, 730 P.2d at 468. Thus, the liquor wholesalers' liens have priority over the bank's security interest in this case.

The Court need not reach the issue of whether the statute creates a condition precedent to the transfer of the liquor license in favor of the wholesalers. The wholesalers waived the argument by signing and agreeing to the March 6, 1989, order allowing the sale of the liquor license free and clear of liens, with the liens attaching to the proceeds of the sale, and authorizing the State of New Mexico's Alcohol and Gaming Division to transfer the license free and clear of liens or claims of liquor wholesalers.

### B. The Thirty Day Credit Law

The bank argues that its security interest has priority over the wholesalers' liens which violate the Thirty Day Credit Rule because the statute does not provide that the lien it creates primes prior filed security interests which have been properly perfected. The wholesalers argue that the statute was amended on June 14, 1985, to allow wholesalers to collect their total debt from retailers, even though there may be a violation of the Thirty Day Credit Law.

The Thirty Day Credit Law is set forth in N.M.S.A. § 60–7A–9 (Repl.Pamp.1987) which states:

Credit extension by wholesalers.

It is a violation of the Liquor Control Act for any wholesaler to extend credit or to agree to extend credit for the sale of alcoholic beverages to any retailer, dispenser, canopy licensee, restaurant licensee, club licensee or governmental licensee or its lessee for any period more than thirty calendar days from the date of the invoice required under the provisions of Section 608A3 NMSA 1978. *A violation of this section does not bar recovery by the wholesaler for the total indebtedness of the retailer, dispenser, canopy licensee, restaurant licensee, club licensee or governmental licensee or its lessee.* (Emphasis added).

Section 60–7A–9 was amended, effective June 14, 1985, by the addition of the last sentence of the statute. Prior to June 14, 1985, wholesalers could not collect debts for liquor sold in violation of the statute. *New Mexico Beverage Co. v. Blything*, 102 N.M. 533, 697 P.2d 952 (1985). *Blything* relied on N.M.S.A. § 60–8A–5 (1978), which provided that "no action shall be maintained ... to collect any debt for merchandise sold, served or delivered in violation of the Liquor Control Act." *Id.* at 534, 697 P.2d at 953.

The effect of the June 14, 1985, amendment was determined by Judge Howard C. Bratton in two memorandum opinions in *The Liquor Co., et al. v. Phillip F. Maloof & Co., et al.*, CIV 87–462 HB (D.N.M. March 22, 1989, and June 29, 1989), in which the court held that any amounts owed in violation of the Thirty Day Credit Law before the June 14, 1985, amendment were not collectible, and any amounts owed in violation of the Thirty Day Credit Law after the amendment were collectible. While the opinions did not address the effect of the statute on a prior perfected security interest, it is clear from reading the statute as a whole that the legislature intended to create a superpriority lien in the wholesaler that is collectible even if it is in violation of the Thirty Day Credit Rule.

■ N.M.S.A. § 60–7A–9 must be read in conjunction with N.M.S.A. § 60–6B–3(E), as the Court must give effect to all provisions of a statute. Legislative intent is to be determined from the language used in the statute as a whole, and each section should be construed in connection with every other section to reconcile different provisions to make them consistent. *State v. Sinyard*, 100 N.M. 694, 675 P.2d 426 (Ct. App.1983), *cert. denied*, 100 N.M. 689, 675 P.2d 421 (1984). The adoption of an amendment is evidence of an intention by the legislature to change the provisions of the original law. *Stein v. Hertz Corp.*, 81 N.M. 69, 463 P.2d 45 (Ct.App.1969), *affirmed* 81 N.M. 348, 467 P.2d 14 (1970), *appeal after remand*, 83 N.M. 217, 490

P.2d 475 (Ct.App.1971), *rev'd on other grounds*, 83 N.M. 730, 497 P.2d 732 (1972).

The purpose of the amendment was to eliminate the forfeiture and allow the wholesaler to collect its debt even though there may be a violation of the Thirty Day Credit Law. Thus, this Court finds that the wholesalers' superpriority liens created by N.M.S.A. § 60–6B–3(E) are prior to the bank's perfected security interest even if there is a violation of the Thirty Day Credit Law. Therefore, any amount owed to the wholesalers after the June 14, 1985, amendment is collectible. It is not possible for this Court to rule on other debts or the extension of credit prior to the June 14, 1985, amendment, as there is not enough evidence before the Court to determine if there was a preamendment violation of the Thirty Day Credit Law.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.

### ORDER

This matter came before the Court on March 7, 1990, for presentment of a judgment. For the reasons set forth in the memorandum opinion entered in connection herewith,

IT IS ORDERED that Joe G. Maloof & Company and Quality Import Company have priority liens over the security interest of United New Mexico Bank at Gallup.

IT IS FURTHER ORDERED that counsel for the debtors shall prepare a judgment in conformity with the Court's memorandum opinion including the appropriate amount of each claim plus statutory interest, approved as to form by counsel for Joe G. Maloof & Company, Quality Import Company, and United New Mexico Bank at Gallup, and submit it to the Court for entry within 30 days.